# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-00599-SBP

BAIZHUANG PAN,

      Petitioner,

v.

TODD BLANCHE *et al.*,[1]

      Respondents.

---

## ORDER OF UNITED STATES MAGISTRATE JUDGE

---

**Susan Prose, United States Magistrate Judge**

Before the court is Petitioner Baizhuang Pan ("Petitioner")'s Application for Writ of Habeas Corpus. ECF No. 1 ("Petition"). For the reasons outlined below, the court respectfully **GRANTS** the Petition.

## I.      BACKGROUND

The court finds that the relevant facts are not in dispute and provides a brief summary of those facts below. In doing so, the court draws heavily on the factual background set forth in the response to the court's February 25, 2026 order, filed at ECF No. 11 (the "Response").

Petitioner is a citizen of China. ECF No. 1 at 2. Respondents, each sued exclusively in their official capacities, are Todd Blanche, the acting Attorney General of the United States;

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Blanche, the current acting Attorney General of the United States, is substituted for former Attorney General Pamela Bondi, and Mr. Markwayne Mullin, the current Secretary of the Department of Homeland Security, is substituted for former Secretary Kristi Noem in this action.

Robert Guadian, the Field Office Director for the Colorado Field Office for U.S. Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, the Secretary of the Department of Homeland Security; and Juan Baltazar, the Warden of GEO Group Aurora Inc. (collectively, "Respondents"). *See* Petition ¶ 15. Petitioner entered the United States in 2000 as a conditional resident, but on December 16, 2008, was convicted of Conspiracy to Commit Pimping in violation of Colorado Revised Statute § 18-7-206 and was subsequently sentenced to prison. Johnson Declaration, ECF No. 11-1 ¶ 4.

On March 22, 2010, after Petitioner had been released from prison, ICE officers encountered Petitioner and determined that he was subject to removal from the United States. *Id.* ¶ 7. Accordingly, he was detained pending resolution of his removal proceedings. *Id.* On the same day, the Department of Homeland Security ("DHS") initiated removal proceedings against Petitioner. *Id.* ¶ 8. The Notice to Appear charged Petitioner with being deportable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), 8 U.S.C. §1101(a)(43)(A), (J), and (K) (an alien who is convicted of an aggravated felony at any time after admission). *Id.*

On May 4, 2010, Petitioner appeared before an Immigration Judge ("IJ"). *Id.* ¶ 9. The IJ ordered Petitioner removed to China. *Id.* Both parties waived their right to appeal, and the IJ's removal order became immediately administratively final. *Id.* Petitioner was then detained pursuant to 8 U.S.C. § 1231. *Id.* ¶ 10. On August 3, 2010, ICE released Petitioner from custody on an order of supervision ("OSUP"). *Id.* ¶ 13.

On September 18, 2025, ICE officers arrested Petitioner in Centennial, Colorado when he appeared for a routine check-in with ICE. *Id.* ¶ 14; *see* Petition at 3. Petitioner was taken into custody in order to effectuate his removal from the United States. Johnson Declaration ¶ 14.

Petitioner's release on an OSUP was revoked and he was detained pursuant to 8 U.S.C. § 1231. *Id.* ¶¶ 14-15.

On October 10, 2025, ICE submitted a travel document request to the government of China on behalf of Petitioner. *Id.* ¶ 16. On November 25, 2025, ICE served Petitioner with a Notice of File Custody Review, which advised him that ICE will review his custody status and potential for release on an order of supervision. *Id.* ¶ 17. The notice also advised Petitioner of the criteria that ICE will consider when deciding whether to release or continue to detain him. *Id.* Additionally, the notice advised Petitioner that he can submit documents in support of his release. *Id.* On or about December 13, 2025, Petitioner requested a personal interview regarding his custody status. *Id.* ¶ 18. On December 15, 2025, ICE conducted a personal interview with Petitioner, whereby he was given the opportunity to make a statement and provide documentation relevant to his custody review. *Id.* ¶ 19. On February 12, 2026, a panel recommended that Petitioner remain detained pending removal, as he failed to meet the criteria for release under 8 C.F.R. § 241.4(e). *Id.* ¶ 20. Petitioner remains detained pending adjudication of the travel document request submitted by ICE to China and Petitioner's removal from the United States. *Id.* ¶ 23.

In his Petition, Petitioner contends, inter alia, that Respondents cannot demonstrate a significant likelihood that he will be removed to China in the reasonably foreseeable future, that his detention has now extended beyond applicable constitutional limits, and that accordingly, his continued confinement violates his Fifth Amendment due process rights pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001). Petition at 7. As a result, he requests that the court order his immediate release under appropriate conditions of supervision. *Id*.

## II.    ANALYSIS

Here, there is no dispute that Petitioner's initial detention was permitted by 8 U.S.C. § 1231(a)(6), that the Immigration and Nationality Act provides that "[e]xcept as provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days," 8 U.S.C. § 1231(a)(1)(A), or that "[d]uring the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). There is also no dispute that certain aliens who are "ordered removed . . . may be detained beyond the [90-day] removal period." 8 U.S.C. § 1231(a)(6). And there appears to be no dispute that since Petitioner was detained pursuant to 8 U.S.C. § 1231(a)(6), he falls into this category of aliens who may permissibly be detained beyond the 90-day removal period. However, the parties also do not appear to dispute that pursuant to *Zadvydas*, there is a six-month period under which detention is presumptively reasonable and does not violate due process in this context, but that beyond this point, detention is not presumptively reasonable. *See* 533 U.S. at 701.

This is where the parties diverge. Petitioner's stance is that his detention has since exceeded any constitutionally permissible period of time. Petitioner argues that the six-month period established in *Zadvydas* applies to him and that the seven months he spent in detention in 2010 should count towards this six-month period. Petition at 4. Respondents do not dispute that the six-month period established in *Zadvydas* applies, but they argue, inter alia, that Petitioner's detention has not yet exceeded six months because he had only been in detention for approximately five months when he filed his petition with this court. Response at 7-8. In doing so, Respondents imply that the seven months Petitioner already spent in custody should not count towards the six-month limit; however, Respondents fail to address this point directly.

4

"[T]here is no dispute that *in the aggregate*, Petitioner's detention has exceeded the presumptively reasonable six-month period for effectuating his removal established by the Supreme Court in *Zadvydas*." *Santacruz Macias v. Baltazar*, No. 26-cv-01046-SKC, 2026 WL 865174, at *3 (D. Colo. Mar. 30, 2026) (emphasis added). And while the court acknowledges that "district courts in the Tenth Circuit are split regarding whether the six-month *Zadvydas* removal period must be successive," *Tran v. Baltazar*, 26-cv-00940-CNS, 2026 WL 764002, at *3 (D. Colo. Mar. 18, 2026), as a whole, "district courts more often conclude that a detainee's periods of detention should be considered together in determining whether the detention has exceeded the presumptively reasonable time under *Zadvydas*." *Aguilar v. Noem*, 25-cv-03463-NYW, 2025 WL 3514282, at *3 (D. Colo. Dec. 8, 2025) (collecting cases). "Courts have even reached the same conclusion where, as here, there is a significant gap between periods of detention." *Tran*, 2026 WL 764002 at *3.

In the absence of any direct argument from Respondents otherwise, the court agrees with the logic underlying the majority position. "[A] uniform rule that counts and sums prior time in detention is appropriate. It is, after all, liberty at issue." *Abuelhawa v. Noem*, No. 4:25-cv-04128, 2025 WL 2937692, at *5 (S.D. Tex. Oct. 16, 2025); *see also Aguilar*, 2025 WL 3514282, at *3 (citing *Abuelhawa*). "Holding otherwise would permit the federal government to 'detain noncitizens indefinitely by continuously releasing and re-detaining them.'" *Aguilar*, 2025 WL 3514282, at *3 (quoting *Siguenza v. Moniz*, No. 25-cv-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025)). And "under *Zadvydas*, expiration of the presumptively reasonable six-month detention period does not mandate a noncitizen's release; detention may continue 'until it has been determined that there is no significant likelihood of removal in the reasonably

foreseeable future.'" *Id*. (quoting *Zadvydas*, 533 U.S. at 701). "Expiration of the six-month period simply requires the Government to rebut a petitioner's showing that 'there is no significant likelihood of removal in the reasonably foreseeable future,' assuming the petitioner makes that showing." *Id*. (quoting *Zadvydas*, 533 U.S. at 701). Accordingly, the court agrees with Petitioner that the seven months he has already spent in detention counts towards the six-month presumptively reasonable period established in *Zadvydas*.

And regardless, the court notes that Petitioner, who was re-detained by ICE on September 18, 2025, has now contemporaneously been detained by Respondents for more than six consecutive months (in addition to the seven months he spent in detention previously). Respondents offer no argument or source of law supporting the idea that even though Petitioner has now indisputably been detained for over six months straight, because this occurred shortly after Petitioner filed his Petition, the court cannot grant Petitioner the relief he requests as a result. Accordingly, in the absence of any argument otherwise, the court finds that this provides an alternative, independent ground upon which to conclude that Petitioner's detention now exceeds the presumptively reasonable period.

Respondents also argue that even if Petitioner has been detained for more than six months, his detention nonetheless remains permissible because he has not met "his burden under *Zadvydas*" to show that there is no significant likelihood that he will be removed in the "foreseeable future." Response at 9. And Respondents additionally argue that if Petitioner has made such an initial showing, Respondents have sufficiently rebutted this showing by showing in turn that his removal is significantly likely in the foreseeable future. *Id*.

The court disagrees. "As a preliminary matter, the Court finds that Respondents have misstated Petitioner's burden under *Zadvydas*." *Aguilar*, 2025 WL 3514282, at \*4. Petitioner is not required to "show that there is no significant likelihood of removal in the foreseeable future," as Respondents suggest, but rather must provide "good reason" to believe that his removal is not significantly likely in the "reasonably" foreseeable future. *See id*. (citing *Zadvydas*, 533 U.S. at 701). "This distinction is not a matter of semantics, but an important clarification of Petitioner's burden at this stage." *Id*.; *see Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 379 (D. Md. 2025) ("to shift the burden of production to the government Mr. Cruz Medina need not *prove* that 'there is no significant likelihood of removal in the reasonably foreseeable future,' but rather must articulate a 'good *reason to believe*' that removal is unlikely in the reasonable foreseeable future."); *Siguenza*, 2025 WL 2734704, at \*3 (distinguishing between providing "good reason" to believe that removal is not significantly likely and "establish[ing]" that removal is not significantly likely).

Indeed, this standard is not especially high. "Petitioner's burden may be met by, inter alia, showing 'the existence of either institutional barriers to repatriation or obstacles particular to his removal.'" *Aguilar*, 2025 WL 3514282, at \*4 (quoting *Dusabe v. Jones*, No. 24-cv-464-SLP, 2024 WL 5465749, at \*3 (W.D. Okla. Aug. 27, 2024), *report and recommendation adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025)). "Courts have found this burden satisfied where, for example, a habeas petitioner shows that some impediment precludes removal to their country of origin." *Id*. (collecting cases).

As stated above, Respondents are attempting to remove Petitioner to China, his country of origin. Petitioner argues, inter alia, that "[p]ublic reporting confirms that removals to China

are relatively infrequent and require significant diplomatic coordination," that "[i]n calendar year 2025, ICE conducted only three removal flights to China, representing a decrease from prior years," and that "[t]here is no evidence that travel documents have been secured for [Petitioner] or that China has affirmatively agreed to accept him in the reasonably foreseeable future." Petition at 3. Petitioner also notes that Respondents have not provided him with any removal date. *Id*. at 5. Respondents answer that these factors do "not mean that removal is not significantly likely to occur in the reasonably foreseeable future," that "in recent months, the government of China has approved travel document requests for individuals like Petitioner," that in those months, "ICE has successfully conducted removals to China," and that "ICE has submitted a travel document request to the government of China on behalf of Petitioner." Response at 8-9. And Respondents also argue that even if Petitioner has sufficiently provided good reason to believe that his removal is not significantly likely in the reasonably foreseeable future, Respondents have made a sufficient rebuttal showing that his removal is significantly likely in the reasonably foreseeable future because "other noncitizens have [ ] received travel documents and been removed to China in recent months." *Id*. at 9.

The court finds that Petitioner has sufficiently provided good reason to believe that his removal is not significantly likely in the reasonably foreseeable future in the form of obstacles particular to removal to China, while Respondents have not sufficiently rebutted this demonstration. In particular, the court notes that the apparent paucity of removal flights to China, which Respondents do not dispute—even if, as Respondents argue, some number of removals have been conducted within the last few months—strongly supports Petitioner's reasoning here. And the court also finds it relevant that there is no evidence that travel documents have been

secured for Petitioner or that China has affirmatively agreed to accept him, which clearly represents an obstacle to Petitioner's removal. The court therefore finds that Petitioner has met his burden here.

Meanwhile, other courts in the Tenth Circuit have concluded that there is no evidence that ICE will succeed in deporting a petitioner in the reasonably foreseeable future where all that is known is that ICE is "taking steps" to remove the petitioner by working to obtain travel documents and where ICE has successfully deported other individuals to the same country of origin in recent months. *See, e.g.*, *Tran*, 2026 WL 764002 at *3; *Chen v. Carter*, No. 26-3026-JWL, 2026 WL 890227, at *2 (D. Kan. Apr. 1, 2026) (rejecting similar arguments regarding detention pending deportation to China); *Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (same). "Such facts simply demonstrate that Petitioner's removal is *possible*. But the mere chance of removal within an unspecified period of time is not the same as a significant likelihood of removal in the reasonably foreseeable future." *Tran*, 2026 WL 764002 at *3 (cleaned up) (citing *Siguenza*, 2025 WL 2734704 at *3). Moreover, "[u]nsubstantiated assertions that the government will pursue removal are insufficient to satisfy [Respondents'] burden." *Pena-Gil v. Lyons*, No. 25-cv-03268-PAB-NRN, 2025 WL 3268333, at *4 (D. Colo. Nov. 24, 2025) (citing *Siguenza*, 2025 WL 2734704, at *3). And it is relevant that Respondents do not indicate that China has even *acknowledged* Respondents' latest request for Petitioner's travel documents. *See Tran*, 2026 WL 764002 at *4. Indeed, "[n]o further details are given concerning any communications from China; thus, it is unknown whether and when petitioner's identify will be verified and China will issue a travel document." *Chen*, 2026 WL 890227, at *2. "Nor does the declarant or respondents discuss any issues particular to petitioner's case, such that

9

the likelihood and timing of the receipt of a travel document and petitioner's removal might be assessed." *Id*. "In light of this, Respondents' representation that ICE has recently successfully removed other noncitizens to [China] does not convince the Court that the same will be true for Petitioner any time soon, particularly given the absence of any representation that the circumstances leading to those other noncitizens' removals are also present here." *Tran*, 2026 WL 764002 at *4. The court accordingly concludes that Respondents have not sufficiently rebutted Petitioner's demonstration that he has good reason to believe his removal is not significantly likely in the reasonably foreseeable future.

Finally, Petitioner requests relief in the form of the court granting his Petition and "order[ing] his immediate release under appropriate conditions of supervision." Petition at 6. Respondents do not contest that, having reached the findings set forth above, the court should grant the relief Petitioner requests here. Accordingly, in the absence of any argument from Respondents to the contrary, the court finds that Petitioner may be released immediately under appropriate conditions of supervision. *See Zadvydas*, 533 U.S. at 700.

Since the court finds that it is able to grant the relief Petitioner requests on the above grounds, the court need not reach any other arguments for relief raised by Petitioner. Accordingly, Petitioner's Petition is granted.

### III.    CONCLUSION

For the foregoing reasons, the court respectfully **GRANTS** Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, and orders Respondents to release Petitioner within one day of the date of this Order under appropriate conditions of supervision. Respondents are also ordered to file a status report in order to certify compliance within ten days of the issuance of this Order.

DATED:                                                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge